UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| A.V. AVINGTON, JR. and<br>PATRICIA L. AVINGTON,<br><br>          Plaintiffs,<br><br>v.<br><br>ANDALES RESTAURANT CORP., D/B/A/<br>ANDALES TEX-MEX GRILL & CANTINA,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 10-CV-0640-CVE-FHM<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

Now before the Court is defendant's Motion to Dismiss (Dkt. # 9). Defendant Andales Restaurant Corp., d/b/a/ Andales Tex-Mex Grill & Cantina (Andales) asks the Court to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. Dkt. # 9, at 1. Plaintiffs have not filed a response.

**I.**

Plaintiffs' complaint arises out of a series of events that allegedly occurred during their visit to defendant's restaurant on August 6, 2010. Dkt. # 1, at 1-2. On that date, plaintiffs claim that they entered the restaurant together around 12:00 p.m. Id. They state that they were greeted and seated by a Caucasian waiter, and that they were the only African-American patrons in the section of the restaurant in which they were seated. Id. at 2. Plaintiffs' waiter gave them water and a menu, and told them that he would return to take their order. Id. Plaintiffs allege that "approximately eight minutes after [they] were preparing to order their food," four Caucasian females entered the restaurant. Id. At that point, plaintiffs state that their waiter "rushed to assist [the female customers,] ignoring the Plaintiff(s) and greeting the . . . female[s] with candor and respect."

Plaintiffs claim that the waiter sat the female customers, and that he then "attended to their every need and did not one time stop to ask the Plaintiff(s) for their order during this process." Id. Plaintiffs further state that after taking the order from the female customers, the waiter then came to plaintiffs' table and took their order. Id. However, they claim that the waiter then "continued to inter[act]" with the female customers, "serving them chips and saucer [sic], and giving them refills on their drinks," while ignoring plaintiffs. Id.

Plaintiffs state that after approximately fifteen to twenty minutes, while they were still waiting to receive their food, they observed the waiter serving meals to the female customers. While that was occurring, plaintiffs allege that they "sat and looked at each other, feeling discriminated against as others in the restaurant observed." Id. After serving the female customers, the waiter allegedly came to the plaintiffs' table, asked them to be patient, and told them that their order was on the way. Id. Plaintiffs claim that they waited an additional five minutes and then, having not been served, "agreed it would be in their best interest to leave the restaurant without making a scene or being disruptive because of the way the Caucasian waiter treated them." Id. at 3. At that time, they claim that it had become apparent to them that "they were obviously being ignored because of their race." Id. They say that, as they left the restaurant, they approached the manager and told him about their experience while dining. Id.

Plaintiffs characterize their treatment at the restaurant as "disrespectful, hostile, and un-business[-]like," and allege that the treatment occurred because of their race, and the "obvious bias and prejudice possessed and exhibited by defendant's Caucasian waiter." Id. They further claim that the conduct by defendant's employee embarrassed and humiliated them, "as other Caucasian customers within the restaurant noticed and observed the discriminatory treatment" to which they

2

were subjected, and that it caused them mental anguish and grief. Id. at 3-4. As a result, each plaintiff seeks judgment against defendant in the amount of $5,000, as well as costs and expenses. Id. at 4.

## II.

In considering a motion under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleadings standard for all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. Of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.3d 1106, 1109-10 (10th Cir. 1991).

3

**III.**

Plaintiffs seek relief under 42 U.S.C. § 1981 for the allegedly racially discriminatory treatment they received from defendant's employee.[1] "Section 1981 prohibits racial discrimination in the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Reynolds v. School Dist. No. 1, Denver, Colo., 69 F.3d 1523, 1532 (10th Cir. 1995)(citing 42 U.S.C. § 1981)(internal quotations omitted). To establish a prima facie case of discrimination under § 1981, a plaintiff must show: (1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981. Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1101-02 (10th Cir. 2001). To survive a motion to dismiss on a discrimination claim, a plaintiff need only allege facts sufficient to state a claim regarding the prima facie case. See Bobbitt v. Rage, Inc., 19 F. Supp. 2d 512, 517-18 (W.D.N.C. July 27, 1998).

Plaintiffs have properly alleged that they are African-American and, therefore, that they are members of a protected class under § 1981. Plaintiffs also allege that defendant's employee had the intent to discriminate based on race, an assertion for which defendant claims plaintiffs have provided no factual basis. Dkt. # 9. However, because this matter can be resolved on the third prong of the test, the Court will not address whether plaintiffs sufficiently alleged an intent to

---

[1] Plaintiffs' complaint presents no theory as to why defendant should be held responsible for the acts of its employee, nor did defendant challenge the complaint on that ground. For purposes of this motion to dismiss, it is sufficient to note that even if plaintiffs could state a § 1981 claim against the restaurant employee, they would still have to prove defendant's vicarious liability. See, e.g., Murray v. Pizza Hut, Inc., No. 96-7032, 1996 WL 425646, at * 3 n.4 (10th Cir. July 30, 1996)(unpublished). Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

discriminate by defendant. Regardless of whether the allegations of discrimination were sufficient, plaintiffs' claims must fail because they have not alleged facts sufficient to state a claim that discrimination by defendant interfered with a protected activity.

The Tenth Circuit Court of Appeals has made clear that interference with a protected activity for purposes of a § 1981 claim requires the "actual loss of a contract interest." Hampton, 247 F.3d at 1101, 1101 n.1. Although most commonly interpreted in the context of employment contracts, § 1981 has also been applied to "discrimination claims arising in the retail sector and restaurant industry, when a contract has been established." Id. at 1102. The Tenth Circuit has not spoken as to when a contract interest is created between a restaurant and its patrons. However, it addressed that question in the context of a retail store in Hampton. In that case, the court noted the paucity of case law as to when a contract interest is established. It therefore turned to the Restatement (Second) of Contracts, and determined that retail stores offer a type of option, or unilateral, contract to their customers.[2] Thus, a customer need only enter a store with the intent to avail himself of the opportunity to buy to establish a contractual relationship. That approach was applied to the restaurant context in Miales v. McDonald's Restaurants of Colo., Inc., 438 F. Supp. 2d 1297 (D.

---

[2]  According to the Restatement (Second) of Contracts,

> (1) Where an offer invites an offeree to accept by rendering a performance and does not invite promissory acceptance, an option contract is created when the offeree tenders or begins the invited performance or tenders a beginning of it.
>
> (2) The offeror's duty of performance under any option contract so created is conditional on completion or tender of the invited performance in accordance with the terms of the offer.

Restatement (Second) of Contracts § 45 (1981).

Colo. 2006). In <u>Miales</u>, the court rejected the defendant's argument that the plaintiffs could not prove the loss of a contract interest because they had never specifically requested service. <u>Id.</u> at 1300. Instead, the court concluded that establishment of a contract interest required a specific intent to make a purchase, not a specific purchase request. <u>Id.</u> That approach appears to be consistent with the Tenth Circuit's interpretation of the contractual relationship, and will be adopted here. Thus, plaintiffs properly alleged a contractual relationship with defendant when they claimed that they entered defendant's restaurant with the intent to purchase food.

However, plaintiffs have not stated facts sufficient to state a claim that the conduct of defendant's employee interfered with that contractual relationship. A claim for impairment of the contractual relationship under § 1981 requires allegations that defendant "changed an essential term of the customer/restauranteur contract because of race," and that plaintiffs were therefore denied the "enjoyment of all the terms and conditions of the contractual relationship that were enjoyed by white citizens patronizing the restaurant." <u>Bobbitt</u>, 19 F. Supp. 2d at 519. Here, plaintiffs allege that they received slower service than other Caucasian customers and that, as a result of that slow service, they chose to leave the restaurant, rather than wait to be served. However, by their own admission, they were seated, given menus, had their orders taken, and were told that their food would be served. They have not claimed that they were refused service at any time. The fact that they had to wait approximately ten minutes for their orders to be taken, or another twenty minutes for their food to reach them, even if based on racial animus, does not constitute an interference with the contractual relationship under § 1981. <u>See</u> <u>Bobbitt</u>, 19 F. Supp. at 518; <u>Robertson v. Burger King, Inc.</u>, 848 F.Supp. 78, 81 (E.D. La. 1994); <u>cf.</u> <u>Hampton</u>, 247 F.3d at 1118 (in context of retail establishment, noting that a § 1981 claim requires "interference with a contract beyond the mere expectation of

6

being treated without discrimination while shopping"). Thus, taking all of plaintiffs' allegations as true and in the light most favorable to them, plaintiffs have failed to state facts sufficient to show any alteration of their contractual relationship with defendant.

Plaintiffs' claims are similar to those of one group of plaintiffs in Bobbitt, who alleged that they were refused service and denied food because of racial animus. 19 F. Supp. 2d at 517-18. Those plaintiffs, who were African-American, alleged a violation of § 1981 based on "their ten-to-twelve minute wait to be seated; the discourteous way in which their waitress seated them; the fact that their ten[-]to[-]fifteen minute wait to receive menus and to order was longer than that of white patrons; and the assistant manager's touching of their pizza with his fingers." Id. However, the court found that plaintiffs were "denied neither admittance to the restaurant nor service, nor were they asked to leave at any time," and were "able to place their order and receive their dinner." Id. at 518. Taking all of those allegations as true, the court found that the plaintiffs failed to state a claim as to the third element of a § 1981 claim, because "the mere fact of slow service in a fast-food restaurant" did not "rise to the level of violating one's civil rights." Id.

The Bobbitt court cited Robertson for its statement that bad service does not rise to the level of a § 1981 violation. In Robertson, the plaintiff, an African-American man, entered a restaurant and placed his order. 848 F.Supp. at 79. However, the plaintiff claimed that, after taking his order, the restaurant employee attending to him "stopped waiting on [him] in order to wait on several white men" in line behind him. Id. The plaintiff further claimed that the employee continued to wait on the men behind him until he complained about the delay in his order in light of the fact that he ordered first. Id. At that point, the restaurant's assistant manager prepared the plaintiff's order. Id. However, the plaintiff persisted in telling the employee that he "would consult higher authorities

7

about the matter," to which the employee responded that she "wouldn't give a damn." Id. Although the plaintiff alleged that the store's customers and employees then began laughing at him, he ultimately received, and paid for, the items he ordered. Id. After noting that the plaintiff "was not denied admittance or service," but that his "service was merely slow," the court denied the plaintiff's claims for relief, which were based in part on a § 1981 claim. Id. at 81. Although the court acknowledged that slow service was "inconvenient, frustrating, and all too common," it held that such service did not constitute a civil rights violation. Id.

In contrast to claims based solely on bad service are those claims where plaintiffs are able to point to an element of the contractual relationship that was altered, apart from delayed seating or receipt of food. For instance, the second group of plaintiffs in Bobbitt, made up of two African-American men and a Caucasian man, alleged that "after they were promptly seated and their orders were taken, they waited thirty to forty minutes for the arrival of their food, during which time they observed a white teenager arrive, place an order, and receive his food." Id. Further, they claimed that while they were waiting, police officers arrived with the manager of the restaurant and "informed them that because three African-American teenagers had left without paying the day before, that they would have to prepay for their order." Id. at 518-19. The court found that the "allegations of bad service, taken alone," did not satisfy the third element of a § 1981 claim. Id. at 519. However, it found that when the manager of the restaurant, through the police, allegedly required the plaintiffs to prepay, he changed an essential term of the customer/restauranteur contract, and that plaintiffs had therefore been denied the "enjoyment of all the terms and conditions of the contractual relationship that were enjoyed by white citizens patronizing the restaurant." Id. Thus, the plaintiffs had stated a proper § 1981 claim.

8

Similarly, in Miales, the court found that the plaintiffs could survive summary judgment on their § 1981 claim. 438 F. Supp. 2d at 1302. In that case, the plaintiffs, an African-American family, attempted to place an order at a restaurant's drive-through window. Id. at 1299. However, in the middle of taking the plaintiffs' order, the drive-through attendant stopped taking their requests. Id. The plaintiffs then went inside the restaurant, and one of the plaintiffs asked to speak to the manager. The plaintiff complained about the drive-through service, and asked the manager if she was going to do something about it. Id. The manager evidently did not address the problem, and the plaintiff subsequently asked, "Why are you being a bitch to me?," to which the manager responded, "Yeah? Well[,] at least I'm not a black bitch," and began to walk away. Id. The plaintiff asked the manager, "Why would you say this to me?," to which the manager responded, "Go look in a mirror." Id. The plaintiffs then left the restaurant without ordering. The court found that plaintiffs had entered the restaurant intending to order food, and a genuine issue of material fact existed as to whether there was an intent to discriminate and whether the discrimination interfered with or impaired the obtainment of service. Id. at 1301.

Plaintiffs' claims fall squarely within the category of claims that allege nothing beyond bad service. Plaintiffs have stated no facts that demonstrate an unwillingness by defendant to extend to them all the terms of their contract upon their entry into the restaurant. And while the mere fact that plaintiffs left the restaurant before receiving their meals is not destructive to their § 1981 claim,[3] they have alleged no facts to indicate that the restaurant did not intend to serve them if they remained. Barring such facts, allegations that plaintiffs received slower service than Caucasian

---

[3]  Where a plaintiff has been subjected to racial discrimination, his choice to voluntarily leave prior to being specifically denied service does not destroy a claim for impairment of the contractual relationship. See Miales, 438 F. Supp. 2d at 1301-02.

customers are insufficient to state a claim under § 1981.  Bad service, although frustrating and unfortunate, is not remediable under that statute.  Although "[t]here may be some level of bad service that would suffice to satisfy the third prong of the section 1981 prima facie case," that threshold has not been crossed in this case.  <u>See</u> <u>Bobbitt</u>, 19 F. Supp. 2d at 518.  Taking all of plaintiffs' allegations as true, the complaint fails to state facts sufficient to allege the third element of a § 1981 claim, and plaintiffs have failed to state a claim upon which relief can be granted.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss (Dkt. # 9) is **granted**.  A separate judgment is entered herewith.

**DATED** this 25th day of January, 2011.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT